# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE RH SHAREHOLDER DERIVATIVE LITIGATION | CASE NO. 18-cv-02452-YGR<br><br>**ORDER GRANTING MOTION TO STAY**<br>Re: Dkt. No. 26 |

Plaintiffs David Magnani and Hosrof Izmirliyan bring this shareholder derivative action on behalf of Nominal Defendant RH, Inc. ("RH") and against current and former officers and directors of RH for "issuing false and misleading proxy statements in violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duties, unjust enrichment, corporate waste, and insider selling." (Dkt. No. 25 ("Compl.") at 1.)

Now before the Court is RH's motion to stay this action pending the resolution of the related securities class action *In re RH, Inc. Securities Litigation*, Case No. 4:17-00554 (N.D. Cal.) (the "Securities Class Action").[1] (Dkt. No. 26 ("Motion").) Having carefully considered the papers submitted, and for the reasons set forth more fully below, the Court **GRANTS** RH's motion to stay.

///

///

///

---

[1] The Court has reviewed the papers submitted by the parties in connection with RH's motion to stay. The Court has determined that the motion is appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

I. **BACKGROUND**

   a. **Factual Background**

Plaintiffs allege as follows:

RH is a luxury home furnishings retailer headquartered in Corte Madera, California. (Compl. ¶¶ 2, 40.) RH promotes its products and takes orders for delivery through its website, catalogs known as "Source Books," and furniture showrooms that reflect samples of some of its products. (*Id.*) In the years prior to Spring 2015, RH had experience surging revenue growth. (*Id.* ¶ 4.)

In March 2015, RH announced plans to launch a yet-to-be-named new product line later in the year. (*Id.* ¶¶ 44-45.) On May 12, 2015, RH filed its annual proxy statement on SEC Schedule 14A, which described RH's Board committees and RH's compensation program and philosophy, solicited stockholder votes in favor of re-electing certain RH directors, and solicited stockholders votes in favor of a non-binding "say-on-pay" compensation proposal. (*Id.* ¶¶ 101-08.) On June 11, 2015, RH formally introduced the new product line, known as RH Modern, which was to be launched in the fall of 2015. (*Id.* ¶ 56.) In October 2015, RH officially launched RH Modern with a 540-page Source Book, a website, and significant floor space at RH showrooms in Chicago, Los Angeles, New York, Denver, Tampa, and Austin. (*Id.* ¶¶ 71-72.)

On December 10, 2015, RH announced third quarter 2015 financial and operating results, which included net revenue at the lower end of the guidance. (*Id.* ¶ 74.) RH's then-CFO Karen Boone attributed the results, in part, to a late release of the RH Modern Source Book and various external macroeconomic factors, including impacts of currency and oil prices. (*Id.*) On February 24, 2016, RH pre-announced fourth quarter 2015 results, which did not meet analysts' expectations or the previously announced guidance. (*Id.* ¶ 84.) RH CEO Gary Friedman attributed the results, in part, to shipping delays, vendor struggles to ramp up production, and low in-stock inventory levels, in addition to some of the external macroeconomic challenges that Boone had identified in December. (*Id.* ¶ 85.) RH's stock subsequently dropped by approximately twenty-five percent. (*Id.* ¶ 86.)

On May 13, 2016, RH filed its annual proxy statement with the SEC, which contained a

similar discussion of RH's board committees and compensation program as contained in the prior year's proxy statement. (*Id.* ¶¶ 111-20.) The 2016 proxy statement again sought stockholder votes to re-elect certain directors and approval of a non-binding "say-on-pay" vote. (*Id.* ¶¶ 111, 117.) On June 8, 2016, RH announced disappointing first quarter 2016 financial and operating results and lowered full-year 2016 guidance, citing, among other factors, production delays and the need for customer accommodations and related expenses. (*Id.* ¶¶ 93-95.) Thereafter, RH's stock price dropped by approximately twenty-one percent. (*Id.* ¶ 96.)

### b. Procedural Background

Following RH's June 8, 2016 announcement regarding its first quarter 2016 results and lowered guidance, multiple securities class actions were filed and later consolidated as the Securities Class Action. The Securities Class Action plaintiffs allege that defendants RH, Gary Friedman, and Karen Boone made false or misleading statements that began on March 26, 2015. (Securities Class Action, Dkt. No. 45 ("SAC Compl.").) They assert claims under Sections 10(b) and 20(a) of the Exchange Act. (*Id.* ¶¶ 234-49.) The Court denied defendants' motion to dismiss the Securities Class Action on February 26, 2018. (Securities Class Action, Dkt. No. 68.)

Shortly thereafter, on April 24, 2018, plaintiff David Magnani filed the first derivative action. (*See* Dkt. No. 1.) On June 29, 2018, a second putative derivative plaintiff, Hosrof Izmirliyan, filed a substantively similar derivative complaint. (Case No. 3:18-cv-03930, Dkt. No. 1.) The Court subsequently consolidated the Magnani and Izmirliyan actions into the instant action, *In re RH Shareholder Derivative Litigation* (the "Derivative Action") and appointed lead counsel on July 19, 2018. (*See* Dkt. No. 22.) Plaintiffs in the Derivative Action filed the operative Verified Consolidated Shareholder Derivative Complaint (the "Derivative Complaint") on August 24, 2018. (*See* Compl.)

The Derivative Complaint names as defendants eight of RH's nine directors (the "Director Defendants") and former RH CFO Karen Boone (collectively, the "Individual Defendants"). (Compl. ¶¶ 26-38.) Therein, it asserts five counts: (i) an Exchange Act Section 14(a) claim against the eight Director Defendants; (ii) a common law breach of fiduciary duty claim against the Individual Defendants; (iii) a common law claim for unjust enrichment against the Individual

Defendants; (iv) a common law claim for waste of corporate assets against the Individual

Defendants; and (v) a common law claim for insider trading and misappropriation of information

against defendants Karen Boone and Carlos Alberini.  (*Id.* ¶¶ 196-224.)

## II.  LEGAL STANDARD

It is well-settled that "the power to stay proceedings is incidental to the power inherent in

every court to control the disposition of the causes on its docket with economy of time and effort

for itself, for counsel, and for litigants."  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

Whether to issue a stay in a case is based on the trial court's sound discretion and basic principles

of equity, fairness, efficiency, and conservation of judicial resources.  *See Filtrol Corp. v.

Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972); *see also Leyva v. Certified Grocers of Cal. Ltd.*, 593

F.2d 857, 863 (9th Cit. 1979) ("A trial court may, with propriety, find it is efficient for its own

docket and the fairest course for the parties to enter a stay of an action before it, pending

resolution of independent proceedings which bear upon the case.").

In contemplating a stay, a court should consider (A) the possible damage which may result

from the granting of a stay; (B) the hardship or inequity which a party may suffer as a result of

denial of a stay; and (C) the orderly course of justice measured in terms of the simplifying or

complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300

F.2d 265, 268 (9th Cir. 1962)).

## III.  ANALYSIS

### A.  Possible Damage Resulting from Grant of Stay

Courts may issue a stay if "it appears likely the other proceedings will be concluded within

a reasonable time in relation to the urgency of the claims presented to the court."  *Lockyer*, 398

F.3d at 1111 (quoting *Levya*, 593 F.2d at 864).  The duration of a stay must reflect "the strength of

the justification given for it."  *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000).  Thus, an

especially lengthy or "indefinite" stay "require[s] a greater showing to justify it."  *Id.*

Plaintiffs argue that they will suffer prejudice because a stay would pause the instant

Derivative Action indefinitely while the Securities Class Action proceeds.  (Dkt. No. 29 ("Opp.")

at 7.) However, plaintiffs need not wait long for the Securities Class Action to conclude—fact discovery ends January 31, 2019, and trial will begin on November 4, 2019.[2] *See In re Twitter, Inc. Shareholder Deriv. Litig.*, No. 18-62-VAC-MPT, 2018 WL 3536085, at *3 (D. Del. July 23, 2018) (finding an 18-month stay "is not likely to cause undue hardship"). Moreover, plaintiffs seek relief in the Derivative Action for "costs incurred in investigating and defending RH and certain of its officers in the pending Securities Class Action." (Compl. ¶ 164.) Therefore, the Securities Class Action must conclude before plaintiffs can obtain the relief they seek in the Derivative Action. *See In re STEC, Inc. Deriv. Litig.*, Nos. CV 10-00667-JVS (MLGx), SACV 10-00220-JVS (MLGx), 2012 WL 8978155, at *8 (C.D. Cal. Jan. 11, 2012) (finding that a derivative action warrants a stay when "the securities class action had not yet been resolved" and plaintiffs in the derivative action seek relief contingent upon resolution thereof).

In addition, instituting a stay in this case does not present any real risk of loss of evidence because parties in the Securities Class Action have nearly completed discovery and must preserve all evidence. *See id.* (finding "no credible risk that evidence will be lost" given the amount of discovery already completed in the underlying class action). Also, because the factual bases of two actions overlap considerably, the Securities Class Action plaintiffs likely sought evidence that will be useful to the plaintiffs in the Derivative Action as well. *See Brenner v. Albrecht*, No. 6514-VCP, 2012 WL 252286, at *7 (Del. Ch. Jan. 27, 2012). Therefore, granting a stay poses minimal risk of damage to plaintiffs in this case because a stay will not significantly prolong any requested relief and plaintiffs do not risk losing evidence.

---

[2] Plaintiffs reliance upon *In re Galena Biopharma, Inc. Deriv. Litig.* and *Smith v. Sperling* does not persuade. In both *Galena* and *Smith*, the plaintiffs in the respective derivative actions would have had to wait <u>several</u> <u>years</u> before the relative underlying securities class actions would conclude. *See In re Galena Biopharma, Inc. Deriv. Litig.*, 83 F. Supp. 3d 1033 (D. Or. 2015); *Smith v. Sperling*, No. CV-11-0722-PHX-JAT, 2012 WL 79237 (D. Ariz. Jan. 11, 2012). Here, the Securities Class Action is set for trial later this year.

Moreover, in the event that unforeseen circumstances result in delay of the Securities Class Action, the Court may use its discretion to lift the stay and allow the instant Derivative Action to proceed. *See In re First Solar Deriv. Litig.*, No. CV-12-00769-PHX-DGC, 2016 WL 687138 (D. Ariz. Feb. 19, 2016) (lifting a stay after an interlocutory appeal would cause plaintiffs in the derivative action to wait more than five years to proceed).

## B. Hardship or Inequity Resulting from Denial of Stay

In general, a derivative suit must be in the company's best interest in order to proceed. *Breault v. Folino*, No. SACV010826GLTANX, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002) (citing *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784 (Del.1981).) For this reason, courts frequently stay shareholder derivative suits in favor of securities class actions "when the cases arise from the same factual allegations and the evidence in the former could jeopardize the company's defense in the latter." *In re STEC*, 2012 WL 8978155, at *4; *see also In re Ormat Techs. Inc.*, No. 3:10-cv-00177-ECR-RAM, 2011 WL 3841089, at *4 (D. Nev. Aug. 29, 2011) ("The concerns of hardship and equity to the moving party are especially relevant in shareholder derivative cases when a securities class action suit is proceeding on the same issues.").

RH argues that proceeding with the Derivative Action risks prejudicing its defense in the Securities Class Action and that simultaneously litigating both cases would force RH to implement conflicting litigation strategies. (Motion at 6-7.) Plaintiffs in the Derivative Action, purportedly on behalf of RH, will seek to prove that RH's directors knowingly or recklessly caused the Company to issue false statements to its investors. (*Id.* at 6.) If plaintiffs ultimately succeed in the Derivative Action, then the officers' liability could be imputed to RH therefore undermining RH's defense in the Securities Class Action. (*Id.* at 6-7.) Myriad courts have found this argument sufficient reason to support a stay in a derivative action. *In re First Solar Deriv. Litig.*, No. CV-12-00769-PHX-DGC, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012).[3] Moreover, RH may suffer if the Derivative Action continues because it would necessarily divert RH's financial and management resources away from its defense in Securities Class Action. (Motion at 7-8.) *See In re STEC*, 2012 WL 8978155, at *4; *Breault*, 2002 WL 31974381, at *2.

For these reasons, RH has sufficiently demonstrated a "clear case of hardship or inequity in being required to go forward" with the Derivative Action because plaintiffs' strategy likely would

---

[3] *Brenner*, 2012 WL 252286, at **4-5; *Cucci v. Edwards*, No. SACV 07-532 PSG (MLGx), 2007 WL 3396234 (C.D. Cal. Oct. 31, 2007); *In re STEC*, 2012 WL 8978155, at *4-5; *In re Ormat*, 2011 WL 3841089, at *4; *Breault*, 2002 WL 31974381, at *2; *Rosenblum v. Sharer*, No. CV 07-6140 PSG (PLAx), 2008 WL 9396534, at *3 (C.D. Cal. July 28, 2008); *In re Twitter*, 2018 WL 3536085, at *3, *In re Insys Therapeutics Deric. Litig.*, No. 12696-VCMR, 2017 WL 5953515, at *2-3 (Del. Ch. Nov. 30, 2017).

undercut RH's defense in the Securities Class Action and divert valuable litigation resources away from RH's defense of that litigation. *See Lockyer*, 398 F.3d at 1112.

### C. Effect of a Stay on the Orderly Course of Justice

In determining whether a stay promotes the orderly course of justice, courts may consider the degree of overlap in factual allegations between parallel cases in order to avoid unnecessary duplicative litigation. *Levya*, 593 F.2d at 863; *see also Cucci v. Edwards*, No. SACV 07-532 PSG (MLGx), 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) (finding that a stay "would promote judicial economy" in light of "common issues in the Securities Class Action and Shareholder Derivative Action").

Plaintiffs argue that a stay would not preserve judicial resources because the Derivative Action presents distinct Section 14(a) and insider trading claims that the Securities Class Action will not resolve. (Opp. at 5-7.) As a preliminary matter, identical claims are not a prerequisite for granting a stay of a derivative shareholder action pending resolution of a related shareholder class action. *See In re STEC*, 2012 WL 8978155, at *6; *In re Ormat*, 2011 WL 3841089, at *5. Moreover, plaintiffs' claims that RH made "false and misleading statements regarding the launch of RH's new product line, RH Modern," provide the factual bases for both the Derivative Action and the Securities Class Action. (*See* Compl. ¶¶ 1, 196-224; SAC Compl. ¶¶ 1, 234-49.) Accordingly, resolution of these claims will further adjudication of both actions and issuing a stay in this case will simplify "issues, proof, and questions of law" in the Derivative Action and will therefore help preserve judicial resources and promote the orderly course of justice. *Lockyer*, 398 F.3d at 1110.

Because (A) the plaintiffs will not experience any significant harm due to the relatively short stay contemplated here, (B) RH will likely suffer prejudice of engaging in contradictory litigation strategies if the Court does not grant a stay, and (C) in light of the shared factual bases of the Derivative Action and the Securities Class Action, a stay will preserve judicial resources, the Court finds that granting the stay ensures the fairest and most efficient course for all parties.

//

//

7

**IV.     CONCLUSION**

For the reasons stated above, the Court **GRANTS** RH's motion to stay the instant action pending the resolution of the related Securities Class Action.  Accordingly, the case is **STAYED.**

The Court **SETS** a Case Management Conference ("CMC") for **Monday, December 2, 2019** at **2:00 p.m.** in Courtroom 1 of the Federal Courthouse at 1301 Clay Street, Oakland, California.  In addition to filing a timely CMC statement, the parties shall include a detailed discovery plan and shall meet and confer with respect to the disclosure of relevant discovery from the Securities Class Action to expedite discovery in this matter.  Should a settlement in the Securities Class Action be reached, counsel shall contact the Court's courtroom deputy to advance the CMC date.

This Order terminates Docket Number 26.

**IT IS SO ORDERED.**

Dated: January 23, 2019

_____

**YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE**